Alene PAPP, et al., Plaintiffs,

v.

Steven J. SNYDER, et al., Defendants.

No. 5:99–CV–1901.

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 20, 2000.

Thomas M. Wilson, Kelley & Ferraro, Cleveland, OH, for Alene Papp, plaintiffs.

Bruce H. Christensen, Jr., Patricia Ambrose Rubright, City of Akron, Law Department, Akron, OH, for defendants.

## OPINION

GWIN, District Judge.

In this civil rights action, Plaintiffs Alene and Thomas Papp bring claims under 42 U.S.C. § 1983 and § 1985, as well as related state-law claims, against Defendant Steven Snyder, Defendant City of Akron, Defendant City of Akron Police Department, and Defendant Edward Irvine, the City's police chief. The plaintiffs say Defendant Snyder, an Akron police officer, used excessive force in subduing their now-deceased son as he attempted to flee the scene of an automobile accident. They further allege that the defendants conspired to conceal Snyder's use of excessive force.

The defendants collectively seek summary judgment on the plaintiffs' claims [Doc. 16]. For the reasons set forth below, the Court denies in part and grants in part the defendants' motion for summary judgment.

### I. Background

The present action arises from the events surrounding the death of the plaintiffs' son, Daniel Hall, on August 9, 1997. On that day, Hall attended a music concert near Canton, Ohio. While Hall was at the concert, one witness says she saw him ingest several tablets of lysergic acid diethylamide ("LSD" or "acid"). A few hours after leaving the concert, Hall drove his vehicle in an erratic manner while traveling southbound on Interstate 77 in Akron, Ohio. After colliding with multiple vehicles, Hall smashed his vehicle into the concrete median in the center of the ex-

pressway. By all accounts, Hall exited his vehicle in an agitated state. Soon thereafter, Hall climbed over the median into the northbound lanes on I–77.

Defendant Steven Snyder, an off-duty Akron police officer, came upon the accident scene while traveling southbound on I–77. As he came onto the scene, a bystander informed Snyder that Hall had collided with multiple vehicles and was now apparently trying to kill himself by moving in and around oncoming traffic. Officer Snyder then drove his vehicle near the area where Hall was walking. Snyder informed Hall that he was an off-duty police officer and requested that Hall move off of the expressway. Hall ran away from Officer Snyder after Snyder climbed the median and joined Hall in the berm lane of I–77 north.

Hall eventually ran into a group of four bystanders who had witnessed the accident and had pursued Hall to prevent him from fleeing the scene. These bystanders, along with Snyder, began wrestling with Hall. While wrestling, Snyder says he employed two pressure point pain techniques in his attempt to subdue Hall. In contrast, the plaintiffs say Snyder restrained Hall by using a choke hold and a carotid sleeper hold.

Despite Hall's continued resistance, the group sufficiently subdued him so that one of the bystanders, a security guard with access to handcuffs, was able to retrieve his handcuffs and place them on Hall. The struggle continued, however, until Akron police officers arrived and placed shackles on Hall's legs.

Shortly after being cuffed and shackled, Hall ceased breathing. An EMS crew on the scene immediately attempted to resuscitate Hall. These attempts ultimately failed, and Hall was pronounced dead soon after the EMS transported him to the hospital. The official autopsy report states that Hall's death resulted from cardiac arrhythmia due to LSD-induced hyperactivity, positional asphyxia, and phenylpropanolamine abuse.

On August 6, 1999, Alene and Thomas Papp, Hall's mother and stepfather, filed the present action against the defendants. The plaintiffs first make claim under 42 U.S.C. § 1983 on behalf of Daniel Hall.[1] The plaintiffs say Defendant Snyder violated Daniel Hall's constitutional rights by using excessive force in restraining Hall. In addition, the plaintiffs say the remaining defendants violated Hall's constitutional rights by maintaining a policy of inadequately training and supervising their police officers, which they say ultimately led to Snyder's use of excessive force.

The plaintiffs next bring a claim on behalf of Hall under 42 U.S.C. § 1985, which prohibits conspiracies to deny a citizen equal protection of the laws.[2] According to the plaintiffs, the defendants conspired to conceal Snyder's use of excessive force.

Finally, the plaintiffs assert state-law claims on their own behalf for wrongful death and intentional or negligent infliction of emotional distress.[3] They also assert a claim for false arrest on behalf of Daniel

1. The Ohio Court of Common Pleas for Summit County has appointed Alene Papp as the administratix of the Estate of Daniel Hall.

2. 42 U.S.C § 1985 provides in pertinent part: If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ... whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

3. The defendants say that Plaintiff Thomas Papp lacks standing to assert a cause of action for wrongful death because he is not the natural or adoptive father of Daniel Hall. Because the Court grants summary judgment to

Hall. The wrongful death and false arrest claims relate to Snyder's alleged use of excessive force in restraining Hall. The emotional distress claim arises from the alleged cover-up of Snyder's actions.

On December 13, 1999, the defendants moved the Court for summary judgment. As discussed below, the Court finds that summary judgment is inappropriate on the plaintiffs' § 1983 claim against Defendant Snyder. However, the Court finds no issues of material fact with regard to the plaintiffs' remaining federal and state claims, and grants judgment to the defendants as to those claims.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure states the procedure for granting summary judgment:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *SEC v. Blavin*, 760 F.2d 706, 710 (6th Cir.1985). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See 60 Ivy Street Corp.*, 822 F.2d at 1435.

Factual disputes about matters essential to adjudication preclude the Court from granting summary judgment. *See id.* But not every factual dispute between the parties will prevent summary judgment. Rather, the disputed facts must be material. They must be facts that, under the substantive law governing the issue, might affect the outcome of the suit. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial. *See 60 Ivy Street*, 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street*, 822 F.2d at 1436 (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505.

### III. Analysis

#### A. Federal Claims

##### 1. 42 U.S.C. § 1983

###### a. Defendant Snyder in his Individual Capacity

The plaintiffs say Defendant Snyder violated Daniel Hall's constitutional rights

---

the defendants on other grounds, the Court does not address this argument.

when he allegedly choked Hall while trying to prevent him from fleeing the scene of the accident. Asserting the affirmative defense of qualified immunity, Defendant Snyder seeks summary judgment on this claim.

■ Generally, government officials performing discretionary functions have qualified immunity "shielding them from civil damages liability as long as their actions could reasonably have been thought to be consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). This immunity gives government officials the ability to reasonably anticipate when their conduct may lead to liability for damages. *See id.* at 646, 107 S.Ct. 3034. Allowing such anticipation serves an important purpose, because where a public official's "duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citation and footnote omitted).

■ The United States Court of Appeals for the Sixth Circuit has set forth a three-step inquiry for evaluating an official's claim of qualified immunity. *See Dickerson v. McClellan,* 101 F.3d 1151, 1157–58 (6th Cir.1996). First, the court must decide whether, based on the applicable law, a constitutional violation has occurred. If so, the court must decide whether the violation involved clearly established constitutional rights. If it finds a violation of clearly established constitutional rights, the court must decide whether "'any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to refrain from such conduct.'" *Adams v. Metiva,* 31 F.3d 375, 387 (6th Cir.1994) (quoting *Brandenburg v. Cureton,* 882 F.2d 211, 215–16 (6th Cir.1989)).

■ Turning to the first step of the qualified immunity analysis, the Court must decide whether Snyder violated Hall's constitutional rights by using excessive force in restraining him. The Fourth Amendment limits the measures a police officer may employ when restraining a suspect. *See Monday v. Oullette,* 118 F.3d 1099, 1104 (6th Cir.1997) (citing *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Specifically, an officer may use only an objectively reasonable amount of force when effecting a seizure, as determined from the standpoint of a reasonable police officer on the scene. *See id.*

The Fourth Amendment's objective reasonableness test cannot be defined precisely or applied mechanically. *See id.* (citing *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Instead, courts must pay attention to the facts and circumstances of each case. Of particular relevance is whether the suspect posed an immediate threat to the safety of the officer or others and whether the suspect was actively resisting or attempting to escape arrest. *See id.*

■ In this case, the Court finds that there is a material factual dispute with regard to the reasonableness of Snyder's use of force. In particular, the parties have offered differing accounts of what type of force Snyder actually employed. Snyder says that he used standard pressure point pain compliance techniques to subdue Hall. However, the plaintiffs say Snyder used a choke hold and a carotid sleeper hold to restrain Hall after he was handcuffed and while he was being restrained by a number of persons.

To support their claim, the plaintiffs offer the report of their medical expert, which states that Hall's death resulted in large part from the application of a choke hold and a carotid sleeper hold. The plaintiffs also offer the affidavit of Eric Lee, an eyewitness to the events surrounding Hall's death. Lee states that he heard

Snyder warn Hall repeatedly that he was going to "choke [Hall] down." Lee also states that Snyder had his arm around Hall's neck at various points during the struggle, even after Hall had been handcuffed.

This factual dispute is material. A jury may very well conclude that the use of a choke hold and a carotid sleeper hold was excessive under the circumstances. Snyder was not alone in restraining Hall; at least four bystanders assisted in keeping Hall from fleeing. Also, Hall was apparently handcuffed during a portion of the time Snyder is alleged to have employed the holds.

Unable to conclude that a constitutional violation has not occurred, the Court must consider the second step in the qualified immunity analysis. Specifically, the Court must decide whether the alleged constitutional violation involved clearly established constitutional rights. The right to be free from excessive force is clearly established under the Fourth Amendment for purposes of qualified immunity. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Having found a potential constitutional violation of a clearly established constitutional right, the Court must now consider the final step of the qualified immunity analysis. This step requires the Court to decide whether any reasonable officer in Snyder's position would have recognized that his conduct was unlawful.

As noted above, the parties dispute the exact nature of Snyder's conduct in restraining Hall. As required at the summary judgment stage, the Court will view this dispute in a light most favorable to the plaintiffs. *See Adickes*, 398 U.S. at 158–59, 90 S.Ct. 1598. Thus, the Court considers whether any reasonable officer in Snyder's position would have used the holds Snyder allegedly employed in subduing Hall.

The Court finds that no reasonable officer would use a choke hold and a carotid sleeper hold on a suspect who is both handcuffed and restrained by four other individuals. While the Court recognizes that police officers must be given adequate discretion in performing their duties, the use of such aggressive maneuvers on a handcuffed suspect goes beyond any reasonable notion of acceptable force. A police officer is not given a license to use any degree of force each time a suspect resists arrest. When that suspect is unarmed, handcuffed, and held down by several individuals, the degree of permissible force is less.

For the reasons discussed above, the Court finds that Snyder is not entitled to qualified immunity. Accordingly, the Court denies his request for summary judgment.

### b. Municipal Defendants

■ The plaintiffs also say that Defendant Snyder's alleged excessive use of force stems from the policy of insufficient police officer training and supervision maintained by Defendant City of Akron, Defendant Akron Police Department, and Defendant Chief Irvine.[4] Arguing that the plaintiffs have failed to offer any evidence in support of their allegations, the defendants seek summary judgment on this claim.

The Court finds that the plaintiffs have failed to provide any evidentiary support for their municipal liability claim. *See National Solid Wastes Management Ass'n v. Voinovich*, 959 F.2d 590, 592 (6th Cir. 1992) (noting that nonmoving party cannot rest on pleadings, but must come forward with specific facts or affidavits to support

---

4. The plaintiffs' claim is essentially against the City of Akron alone. The City of Akron Police Department is not an independent entity, but is rather a governmental unit of the City of Akron. *See Williams v. Dayton Police Dept.*, 680 F.Supp. 1075, 1080 (S.D.Ohio 1987). Further, a claim against Chief Irvine in his official capacity is tantamount to a claim directly against the City of Akron. *See Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

its claims and show existence of genuine, material issue in dispute). The Court therefore finds that the plaintiffs have abandoned their § 1983 claim against the municipal defendants, and grants summary judgment accordingly.

### 2. 42 U.S.C. § 1985

The plaintiffs next make claim under 42 U.S.C. § 1985, alleging that the defendants conspired to conceal Defendant Snyder's use of excessive force. Arguing that the plaintiffs have again failed to offer any evidentiary support for their claim, the defendants seek summary judgment.

■ As evidence of an unlawful conspiracy, the plaintiffs point to the fact that Hall's body was released for funeral preparation only a few hours after the autopsy was completed. Without more, the plaintiffs cannot withstand the defendants' motion for summary judgment. More than a mere scintilla of evidence is required to avoid summary judgment. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Rather, the plaintiffs must offer evidence upon which a jury could reasonably find in their favor. *See id.* No reasonable jury could infer that a conspiracy existed among the defendants from the mere fact that Hall's body was made available for funeral preparation shortly after the autopsy. Accordingly, the Court grants summary judgment to the defendants on the plaintiffs' § 1985 claim.

### B. State Claims

Beyond their civil rights claims, the plaintiffs assert state-law claims for wrongful death, intentional or negligent infliction of emotional distress, and false arrest. The defendants say they are entitled to summary judgment on these claims. First, the defendants essentially contend that the plaintiffs have failed to state a legally cognizable claim for wrongful death. Second, the defendants say they are immune from liability for the plaintiffs' remaining state tort claims under Chapter 2744 of the Ohio Revised Code.

The plaintiffs have not responded to either argument offered by the defendants in support of their motion for summary judgment. Consequently, the Court finds that the plaintiffs have abandoned their state-law claims. The Court thus grants summary judgment to the defendants.

### IV. Conclusion

For the reasons discussed above, the Court denies in part and grants in part the defendants' motion for summary judgment. The Court finds that Defendant Snyder is not entitled to summary judgment with regard to the plaintiffs' 42 U.S.C. § 1983 claim against him in his individual capacity. However, the Court grants summary judgment to the defendants on all of the plaintiffs' remaining federal and state-law claims.

IT IS SO ORDERED.

### ORDER

The Court has entered its opinion in the above-captioned case. For the reasons set forth therein, the Court denies in part and grants in part the defendants' motion for summary judgment. The Court finds that Defendant Snyder is not entitled to summary judgment with regard to the plaintiffs' 42 U.S.C. § 1983 claim against him in his individual capacity. However, the Court grants summary judgment to the defendants on all of the plaintiffs' remaining federal and state-law claims.

IT IS SO ORDERED.