Saii JOHARI, Plaintiff,

v.

**CITY OF COLUMBUS POLICE DEPARTMENT, et al.,** Defendants.

No. C2–99–967.

United States District Court, S.D. Ohio, Eastern Division.

Jan. 23, 2002.

Saii–Johari, Columbus, OH, pro se.

Jeffrey S. Furbee, Columbus City Atty's Office, Columbus, OH, Elizabeth C. Burke, City Atty's Office, Columbus, OH, for Defendants.

### *ORDER AND OPINION*

MARBLEY, District Judge.

This matter is before the Court on cross motions for summary judgment filed by Defendants on February 12, 2001 and by Plaintiff on February 28, 2001. For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment in its entirety, and **DENIES** Plaintiff's Motion for Summary Judgment in its entirety.

### I. FACTS

At approximately 4:00 p.m. on December 14, 1998, Plaintiff Saii Johari ("Johari") arrived at the Club LaRouge, an adult entertainment establishment in Columbus, Ohio. Plaintiff was planning on meeting a male friend at the club, which Plaintiff had not visited previously. After paying a sev-

en dollar cover charge, Johari states that a dark-haired, heavyset woman told him that since it was his first time at the club, she would have the girls dance for him, and that he could pick one of them to take into a private room to "have some fun." Once all of the girls danced nude for him, Plaintiff told the heavyset woman that he liked a dancer named Faye Raney ("Raney"). Johari and Raney then had a twenty-minute sexual encounter,[1] after which she asked him to buy her a twenty dollar drink, and the other woman asked him for a twenty percent tip for Raney's services. A dispute arose when Plaintiff refused to pay either woman. According to Defendants, an employee of the club, Chastity Puckett ("Puckett"), called the police because of Plaintiff's threatening behavior. Johari claims that Puckett warned that several of her girls dated Columbus police officers whom they could get to come and arrest Plaintiff. Johari states that he wanted to see if she could really have him arrested, so he again refused to pay for Raney's services.

As a result of the dispute, Puckett then called the police, and Officer Huhn ("Huhn") was dispatched to the scene. Huhn was told by the dispatcher that a man was causing a disturbance and refusing to leave the club. When Huhn arrived at Club LaRouge, the heavyset woman ran to him and said loudly, "he has a gun." Plaintiff then started to take off his clothes to show Huhn that he did not have a gun. As Johari was disrobing on High Street, Huhn spoke with a group of women, including Raney, Puckett, and Robin King, another employee of the club, and was told that Johari had assaulted Raney. After being told that Johari had a gun and had assaulted a dancer, Huhn drew his weapon and ordered Plaintiff to get on the ground.

At this point, Officer Tim McVey ("McVey") arrived on the scene after responding to Huhn's report of a man with a gun, and drew his weapon, as well.

Johari did not comply with the order to get on the ground, and instead told the officers to arrest Raney for falsely accusing him of assault. Huhn again ordered him to get on the ground, but Plaintiff still refused to comply. Johari refused a third request by McVey, but finally laid on the ground once Officer Fox and Officer Nemchev, both females, arrived at the scene. Huhn then walked up to him and allegedly kneed him in the back and rammed his head into the sidewalk, causing Johari pain and breaking his glasses. Huhn and McVey state in their affidavits that Huhn only used his knee to restrain Plaintiff for handcuffing, and that at no point did Huhn ram his knee into Johari's back. They also deny that Plaintiff's head was ever pushed into the ground. Plaintiff claims that Huhn screamed at him that he was going to jail and then handcuffed him too tight, causing his wrists to swell and bruise.

Once Johari was placed in the back of Huhn's patrol car, Huhn supposedly had a "meeting of the minds" with the women from the club to discuss how they "could go about charging Plaintiff with a crime, so Huhn could effectuate an arrest." Plaintiff admits that he called Huhn a racist and was otherwise verbally abusive to him during the incident. Eventually, Johari was transported to jail and apparently charged with assaulting Raney by pushing her up against a wall. The criminal charges against him were later dropped because prosecution witness Raney did not appear in court.

---

1. Plaintiff states that he and Raney had consensual sexual intercourse in the back of the Club LaRouge.

## II. PROCEDURAL HISTORY

On December 15, 1998, the day after the incident, Johari went to police headquarters and filed a complaint against Huhn and McVey. Sergeant Kevin Conley received the complaint and, after conducting an investigation, found Plaintiff's complaint to be baseless. Proceeding *pro se,* Johari subsequently filed this action on September 29, 1999, against the City of Columbus Police Department, Officer Jeffery Huhn, Sergeant Kevin Conley, and Faye Raney. On February 9, 2001, the Court entered a default judgment as to Defendant Raney.

Plaintiff alleges that Huhn violated his First Amendment rights of liberty and peaceful assembly; his Fourth Amendment rights of privacy and freedom from unreasonable searches and seizures; his Eighth Amendment rights against cruel and unusual punishment; his Fourteenth Amendment rights of due process and equal protection; and that Huhn violated Ohio Revised Code § 2921.44 through dereliction of duty by failing to establish probable cause. Plaintiff further claims that Huhn breached his fiduciary obligation to protect and serve, and used government powers for purposes of oppression, although he knew or should have known that his actions were unlawful. Plaintiff also contends that, by absolving Huhn and McVey of any wrongdoing, Sergeant Conley committed all of the same violations. Specifically, Plaintiff's Complaint alleges violations of 42 U.S.C. §§ 1981, 1983, and 1985. Johari seeks a declaratory judgment stating that the actions of all Defendants were unconstitutional, injunctive relief to expunge Plaintiff's false arrest record, and $300,000 in compensatory damages.

## III. STANDARD OF REVIEW

In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the nonmoving party." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir.1994). Significantly, "[t]he filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991) (citing *John v. State of La. (Bd. of Trustees for State Colleges & Univ.),* 757 F.2d 698, 705 (5th Cir.1985)).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad.,* 929 F.2d at 248. Summary judgment is therefore appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see*

also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

## IV. ANALYSIS

### A. City's Capacity to be Sued

■ As a threshold consideration, Defendants argue that the named Defendant, City of Columbus Police Department, lacks the capacity to be sued and should be dismissed as a party. Ohio Revised Code § 715.01 provides: "Each municipal corporation is a body politic incorporate, which shall have perpetual succession, may use a common seal, sue and be sued, and acquire property ...." Section 102 of the Charter of the City of Columbus establishes the Division of Police as a subdivision of the Department of Public Safety. Nowhere does the charter establish a Police Department, although the Division of Police does provide various emergency and police services. The Division of Police is an administrative vehicle by which the city operates and performs its functions. Defendants, therefore, contend that the City of Columbus Police Department is not *sui juris*. But, since *pro se* plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings, the Court considers the merits of Johari's Complaint as if the City of Columbus had been named as a Defendant, rather than the City of Columbus Police Department. *See Boswell v. Mayer*, 169 F.3d 384 (6th Cir.1999).

### B. § 1983 Claim Against the City of Columbus

■ Section 1983 provides:
Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. By its terms, § 1983 creates no substantive rights; it merely provides remedies for deprivations of established rights. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (citation omitted).

There are two essential elements of a § 1983 claim: (1) "there must be a deprivation of the plaintiff's '... rights, privileges, or immunities secured by the Constitution and laws ...' of the United States;" and (2) "the plaintiff must allege that the defendants deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory.'" *Dunn v. Tennessee*, 697 F.2d 121, 125 (6th Cir. 1982) (citations omitted).

Plaintiff argues that Conley's finding that Johari's allegations were unfounded can be construed as an unwritten custom, policy, or practice to establish the City's liability. Plaintiff further claims that the actions of Huhn and Conley were done pursuant to an official unwritten policy called Operation ACE (Active Criminal Eviction), which allegedly absolves police officers of misconduct while engaging in proactive policing. Operation ACE gave the City broad powers to police "so they could ferret out crime." Plaintiff states that "[c]itizens in predominately Black neighborhoods were thus detained, questioned, and in some instances verbally abused." Plaintiff contends that Chief of Police Jackson is powerless to control corrupt officers because any attempt to discipline a rogue cop is overturned by "some arbitrator." Plaintiff maintains that the "City's ratification of a policy that absolves

guilty officers of wrongdoing" and Operation ACE are policies that create a causal connection linking the City with the actions of its officers. Thus, Plaintiff states that a reasonable inference can be drawn that the City acquiesces to misconduct.

Municipalities are not liable under § 1983 for every misdeed of their employees and agents; instead, it is when execution of a municipality's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that a municipality is responsible under § 1983. *See Garner v. Memphis Police Dept.*, 8 F.3d 358 (6th Cir.1993). Even if Huhn and Conley violated Plaintiff's rights, their actions cannot be imputed to the City, because the doctrine of *respondeat superior* does not apply to municipalities in § 1983 actions. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611.

The Sixth Circuit has held that failing to investigate and discipline alleged misconduct may be considered evidence of a policy or custom to render the City liable. *See Leach v. Shelby County Sheriff*, 891 F.2d 1241 (6th Cir.1989). In the case *sub judice*, however, there is no evidence that the Division of Police or the City of Columbus failed to investigate Plaintiff's allegations or discipline officers who may have violated his rights. In fact, Sergeant Conley did conduct a thorough investigation of the incident by interviewing all involved and deciding that Johari's allegations were unfounded. Conley's decision cannot be construed as an unwritten policy or custom to establish the City's liability. Moreover, there is no evidence that Operation ACE led to his arrest or created a causal connection linking the officers' actions and the City of Columbus.

As Plaintiff has failed to set forth any credible evidence demonstrating a policy or custom to establish the City's liability, the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's § 1983 claims against the City of Columbus.

### C. State Law Claims Against the City of Columbus

■ Defendants argue that the City is statutorily immune from Plaintiff's state law claims under the Political Subdivision Tort Liability Act, set forth in Ohio Revised Code Chapter 2744. Specifically, § 2744.02 states:

(A)(1) For purposes of the Chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

O.R.C. § 2744.01(C)(2) defines "governmental function" to include "the provision or nonprovision of police ... services." Plaintiff does not defend his state law claims against the City of Columbus in any of his pleadings. Since Plaintiff presents no facts or arguments to defend his state law claims against the City of Columbus, the City may be considered immune from these claims. *See Papp v. Snyder*, 81 F.Supp.2d 852, 858 (N.D.Ohio 2000) (granting summary judgment to defendants on state law claims because plaintiff did not respond to argument of immunity under Chapter 2744 of the Ohio Revised Code). The Court, therefore, **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's state law claims against the City of Columbus.

## D. Individual § 1983 Claims Against Huhn and Conley

Generally, government officials performing discretionary functions have qualified immunity "shielding them from civil damages liability as long as their actions could reasonably have been thought to be consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). This immunity gives government officials the ability to anticipate reasonably when their conduct may lead to liability for damages. *See id.* at 646, 107 S.Ct. 3034. Allowing such anticipation serves an important purpose, because where a public official's "duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citation and footnote omitted).

The Sixth Circuit has set forth a three-step inquiry for evaluating an official's claim of qualified immunity. *See Dickerson v. McClellan,* 101 F.3d 1151, 1157–58 (6th Cir.1996). First, the court must decide whether, based on the applicable law, a constitutional violation has occurred. If so, the court must decide whether the violation involved clearly established constitutional rights. If it finds a violation of clearly established constitutional rights, the court must decide whether " 'any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to refrain from such conduct.'" *Adams v. Metiva,* 31 F.3d 375, 387 (6th Cir.1994) (quoting *Brandenburg v. Cureton,* 882 F.2d 211, 215–16 (6th Cir.1989)).

Where a defendant moves for summary judgment based on qualified immunity, the plaintiff first must "identify a clearly established right alleged to have been violated" and second, "establish that a reasonable officer in the defendant's position should have known that the conduct at issue" violated that right. *Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir. 1995) (citations omitted). The "ultimate burden of proof" is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Wegener v. Covington,* 933 F.2d 390, 392 (6th Cir.1991). The defendant has the "initial burden of coming forward with facts to suggest that [he] w[as] acting within the scope of [his] discretionary authority during the incident in question." *See Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir.1992) (citation omitted). The burden then shifts "to the plaintiff to establish that the defendant['Js conduct violated a right so clearly established that any official in the defendant['Js position [ ] would have clearly understood that [he] w[as] under an affirmative duty to refrain from such conduct." *Id.*

### 1. Fourth Amendment Claim of Wrongful Arrest

■ Plaintiff argues that he was wrongly arrested in violation of his Fourth Amendment rights. Johari states that Huhn should have known that Raney's and Puckett's allegations were without merit once their claim that Johari had a gun was proved false. After Plaintiff disrobed and showed that Huhn that he did not have a weapon, Huhn had no basis to proceed with the arrest. Plaintiff requested that Huhn actually arrest Puckett for making a false complaint about the gun. Furthermore, Raney claimed that she was pushed against a wall, while other witnesses claimed she was punched in the face. Plaintiff argues that these conflicting stories, combined with the fact that Raney had no bruises or abrasions, should have proven to Huhn that the allegations were

false and that he lacked probable cause to arrest Johari.

Yet, after arriving on the scene, Officer Huhn was told both that Johari had a gun and that he assaulted Raney. Although he later determined that there was no gun, statements made by Raney and Puckett indicated that there was likely some sort of assault committed. And Johari was admittedly hostile and uncooperative throughout the encounter. Based on the circumstances, the Court finds that Huhn had probable cause to arrest Johari and did not violate any constitutional right in doing so. Therefore, Officer Huhn is entitled to qualified immunity from Plaintiff's claim of false arrest in violation of the Fourth Amendment. Defendants are also entitled to summary judgment on Plaintiff's allegation of invasion of privacy under the Fourth Amendment, as Johari has offered no support whatsoever for this claim.

### 2. Fourth Amendment Claim of Excessive Force

■ Plaintiff contends that Officer Huhn used excessive force by drawing his weapon, kneeing Johari in the back, and placing handcuffs on Plaintiff that were too tight. First, Plaintiff asserts that the claim that he had a gun was obviously false after Plaintiff began to disrobe on High Street; therefore, Huhn had no reason to draw his weapon in self defense. Pointing his weapon at Johari unnecessarily jeopardized Plaintiff's life. Second, Plaintiff claims that Huhn kneed him in the back, causing him pain. Third, Johari alleges that Huhn slammed his head into the sidewalk and broke his glasses. Finally, Johari maintains that his handcuffs were too tight, and that the nurse on duty at the jail confirmed bruising on his wrists.

The Fourth Amendment limits the measures a police officer may employ when restraining a suspect. See Monday v. Oullette, 118 F.3d 1099, 1104 (6th Cir. 1997). Specifically, an officer may use only an objectively reasonable amount of force when effecting a seizure, as determined from the standpoint of a reasonable police officer on the scene. See id. The Fourth Amendment's objective reasonableness test cannot be defined precisely or applied mechanically. See id. Instead, courts must pay attention to the facts and circumstances of each case. Of particular relevance is whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect was actively resisting or attempting to escape arrest. See id.

In this case, Johari posed at least a perceived immediate threat to the safety of Huhn and the bystanders, based on his combative behavior and the claim that he had a gun. Furthermore, by refusing three separate requests by Huhn to get on the ground, Plaintiff could be said to have been resisting arrest. Despite the fact that he did not have a gun and eventually submitted to Huhn's authority, Johari created a dangerous situation that warranted all of Huhn's actions, none of which involved excessive force.

First, Huhn was told that Johari had a gun, leading him to draw his own weapon in self defense. Huhn had every right to draw his gun to protect his safety and the safety of the other bystanders. Even though Plaintiff was attempting to disrobe, Huhn could not be sure that Plaintiff did not possess a firearm. It was objectively reasonable under these circumstances for Officer Huhn to draw his gun as a precaution. Second, Huhn did not use excessive force when he placed his knee on the back of Johari. Plaintiff had been hostile and uncooperative throughout the encounter, and Huhn was simply restraining the suspect in the process of making an arrest. The use of Huhn's knee to facilitate the arrest was objectively reasonable in this situation. Third, there is no evidence that

Huhn slammed Plaintiff's head into the sidewalk. None of the witnesses support this allegation. Johari suffered no head or facial injuries, and none of the witnesses have verified that his glasses were broken. Even if Plaintiff's head did inadvertently hit the sidewalk, this would not constitute excessive force. Finally, even if Huhn handcuffed Plaintiff too tight, Huhn was unaware of his pain and Plaintiff suffered no serious injury from his actions.

The Court finds that all of these actions involved objectively reasonable amounts of force from the standpoint of a reasonable officer on the scene. And Plaintiff was not injured by any of these actions. Officer Huhn did not violate any constitutional right by using such force and is, thus, entitled to qualified immunity on all of Plaintiff's allegations that he used excessive force.

### 3. Retaliation Claim

■ Plaintiff alleges in his Complaint that Defendant police officers chose to arrest him as retaliation for Plaintiff's filing another lawsuit against fellow police officers. Under the Sixth Circuit's three-part test to evaluate a retaliation claim, a plaintiff must show: 1) that the plaintiff was engaged in a protected activity; 2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and 3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998).

Plaintiff previously filed a lawsuit, which was settled, against Officer Frank Nichols, Jr. for allegedly assaulting Plaintiff while Johari sat in his parked car. In his Complaint, Johari alleges that he told Huhn that Johari had a suit pending against "a couple of his corrupt comrades" and that Johari would not hesitate to sue again if

Huhn falsely charged him with a crime. Plaintiff thus claims that Huhn arrested him in part because of his prior suit. Yet, besides this allegation in his Complaint, Johari offers no evidence that Huhn even knew who he was when arresting him, much less that he had filed a lawsuit against another officer.

Plaintiff's allegation of retaliation is baseless. Johari cannot satisfy the third prong of *Bloch*, because he has not set forth any evidence that Huhn knew whom he was arresting or that Plaintiff had filed a suit against Huhn's colleagues. Therefore, neither Huhn nor Conley violated any of Johari's constitutional rights, and each is entitled to qualified immunity on Plaintiff's retaliation claim.

### 4. Equal Protection Claim

■ Plaintiff alleges that Defendant Huhn violated his equal protection rights under the Fourteenth Amendment because his arrest was racially motivated. But Plaintiff has never specified how Defendants' actions deprived him of his equal protection rights. Johari testified in his deposition that he could tell Huhn's actions were racially motivated because of "his demeanor, his actions, all of that." Besides his conclusory allegation that his arrest was racially motivated, Plaintiff offers no evidence or argument to support his claim that Huhn's actions violated Plaintiff's equal protection rights.

Plaintiff has failed to produce any evidence or argument to support his contention that Defendants violated his equal protection rights under the Fourteenth Amendment. Therefore, Defendants are entitled to qualified immunity on this claim.

### 5. Due Process Claim

Plaintiff claims that Defendants violated his substantive due process rights by "unlawfully searching, seizing, and falsely ar-

resting Plaintiff." Plaintiff has offered no evidence to suggest that Huhn or Conley violated his substantive due process rights under the Fourteenth Amendment. As stated previously, Huhn did not unlawfully search, seize, or arrest Plaintiff. Defendants are, thus, entitled to qualified immunity on this claim.

Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment as to all of Plaintiff's individual § 1983 claims against Huhn and Conley.

### E. § 1985 Claim for Conspiracy

■ Plaintiff asserts a § 1985 claim based on Huhn's alleged conspiracy with Raney to have Plaintiff arrested. Section 1985(3) provides in pertinent part:

> If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ... whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). In this type of action, a plaintiff must establish four elements: (1) that the defendant was involved in a conspiracy; (2) for the purpose of depriving, either directly or indirectly, the plaintiff of the equal protection of the laws or of equal privileges and immunities under the laws; (3) and that the defendant committed an overt act in furtherance of the conspiracy; (4) whereby the plaintiff was injured in his person or property or

deprived of any right or privilege of a citizen of the United States. *Griffin v. Breckenridge,* 403 U.S. 88, 102–103, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

To support his § 1985 claim, Plaintiff simply states that because he "has proven that the actions of the Defendants were done in bad faith, were done with a predisposition, were done with malice and were deliberately indifferent, Plaintiff has proven the elements necessary to hold the Defendants liable ... Plaintiff's rights were denied him after a meeting of the minds between a private citizen and a government agent."

Plaintiff has clearly not produced any facts to support his claim of conspiracy under the *Griffin* test. Simply because Huhn talked with Raney and, in Johari's words, had a "meeting of the minds" during the December 14, 1998 encounter does not mean that the two conspired to harm Plaintiff in any way. Raney simply alleged that she was assaulted by Plaintiff, causing Huhn to arrest Johari.

The Court, therefore, GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's § 1985 claim.

### F. § 1981 Claims

■ Plaintiff asserts a § 1981 claim against Defendant Huhn as well. Section 1981 provides:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) For purposes of this section, the term "make and enforce contracts" in-

cludes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(a)-(b). In addition to establishing a *prima facie* case of discrimination, the plaintiff must demonstrate purposeful discrimination in a § 1981 claim. *General Bldg. Contractor's Assoc., Inc. v. Pennsylvania*, 458 U.S. 375, 390, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). The burden of demonstrating purposeful discrimination is present throughout the *prima facie* case and, if applicable, in the pretextual analysis. To establish individual liability, the individual defendant must have been personally involved in the discriminatory action. *Allen v. Ohio Dept. of Rehabilitation and Correction*, 128 F.Supp.2d 483, 495 (S.D.Ohio, 2001).

Plaintiff contends that Officers Huhn and McVey did not afford him the same treatment they afforded white citizens. Specifically, Johari claims that the officers had been commended "for going above and beyond the call of duty (for white people)," but that they refused him the same level of professional service by failing to determine whether Plaintiff actually assaulted Raney. But, again, Plaintiff provides no evidence that Huhn or McVey treated him differently than they treated white citizens. Johari has failed to establish a *prima facie* case of discrimination under § 1981, and Plaintiff certainly has not demonstrated purposeful discrimination.

The Court, therefore, **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's § 1981 claim.

### G. First Amendment Claims

Plaintiff alleges that Defendants Huhn and Conley improperly denied him his First Amendment rights to "liberty and peaceful assembly." Plaintiff offers no evidence or argument to support this contention, and Plaintiff does not address the First Amendment issue at all in his Motion for Summary Judgment.

Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's First Amendment claim.

### H. State Law Claims

■ Defendants argue that Huhn and Conley are statutorily immune from any state law claims plaintiff may be alleging. Ohio Revised Code § 2744.03(A)(6) provides that:

> the employee is immune from liability unless one of the following applies: (a) his acts or omissions were manifestly outside the scope of his employment or official responsibilities; (b) his acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) liability is expressly imposed upon employee by a section of the Revised Code.

O.R.C. § 2744.03(A)(6). The only exception that may apply is for acts done with malicious purpose, in bad faith, or in a wanton or reckless manner. Otherwise, a presumption of immunity exists with regard to employees of political subdivisions under Ohio law. A plaintiff faced with a motion for summary judgment must demonstrate that he possesses sufficient evidence to create a jury question as to whether the presumption has been rebutted. *Cook v. City of Cincinnati*, 103 Ohio App.3d 80, 658 N.E.2d 814 (1995).

First, "malice" for the purposes of subsection (b) refers to a willful and intentional design to do injury, or the intention or desire to harm another, through conduct which is unlawful or unjustified. *Piro v. Franklin Twp.*, 102 Ohio App.3d 130, 656 N.E.2d 1035 (1995). While malice may be inferred from a lack of probable cause, the term "malicious purpose" in subsection (b) implies more than a lack of probable cause. Under § 2744.03(A)(6), mere negligence in making a probable cause determination is

not sufficient to impose personal liability on the officer. *Cook*, 103 Ohio App.3d at 91, 658 N.E.2d 814. Likewise, the fact that a charge against a plaintiff was later dismissed does not warrant a finding that the officer acted maliciously in making the arrest. *Id.* Rather, to act with "malicious purpose" the officer must act with a "willful and intentional design to do injury" or "to harm another." *Id.*

Second, the term "bad faith" involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or actual intent to mislead or deceive another. *Id.* Third, "wanton" misconduct is the failure to exercise any care whatsoever. *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 639 N.E.2d 31 (1994). Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor. *Id.* at 355, 639 N.E.2d 31. Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury. *Roszman v. Sammett*, 26 Ohio St.2d 94, 269 N.E.2d 420 (1971).

Finally, "reckless conduct" refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary and unreasonable risk of harm, and that this risk is substantially greater than that necessary to make the conduct negligent. *Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705 (1990); *Poe v. Hamilton*, 56 Ohio App.3d 137, 565 N.E.2d 887 (1990) ("reckless" as used in § 2744.03(A)(6)(b) means a perverse disregard to a known risk). In *Poe*, the Court noted that the word "reckless" is associated in subdivision (b) with the words "malicious purpose", "bad faith" and "wanton," and that all these terms suggested conduct more egregious than simple carelessness.

Under § 2744.03(A)(6), the liability of a police officer does not depend solely upon whether his or her determination of probable cause is later found to be incorrect but also upon whether the officer acted "with malicious purpose, in bad faith, or in a wanton or reckless manner" in making that determination. Defendants contend that there is no evidence from which a jury could conclude that Officer Huhn acted with malicious purpose, in bad faith, or in a wanton or reckless manner in arresting Plaintiff for assaulting Raney, and in allegedly using excessive force to effectuate the arrest. Moreover, Johari has not presented any evidence that Officer Conley acted with malicious purpose, in bad faith, or in a wanton or reckless manner in subsequently investigating Johari's allegations.

Plaintiff's vague allegations of sinister intent are not enough, and are completely unsupported by any evidence. Huhn arrested Plaintiff based on a determination of probable cause and the minimal force he used was reasonable under the circumstances. Sergeant Conley conducted his investigation in good faith and provided Johari all required due process protections.

Plaintiff does not present any argument that Defendants are not immune from his state law claims, pursuant to O.R.C. § 2744.03(A)(6). The exception set forth in subsection (b) does not apply in this case. In arresting Johari, Officer Huhn did not act with "malicious purpose, in bad faith, or in a wanton or reckless manner." Plaintiff's mere allegations that Huhn acted out of racism is not enough to rebut the presumption of immunity and, therefore, Defendants are statutorily immune from Plaintiff's state law claims, pursuant to O.R.C. § 2744.03(A)(6).

Even if Defendants are not immune from these state law claims, Plaintiff has failed to raise an issue of material fact

to survive summary judgment on these claims. First, Officer Huhn did not commit assault or battery as Plaintiff alleges. An assault is defined as the willful threat or attempt to harm or touch another offensively, coupled with a definitive act by one who has an apparent present ability to do harm or to commit the offenses of touching. *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 614 N.E.2d 1148 (1993). A battery is defined as a harmful or offensive touching of another person. *Love v. City of Port Clinton*, 37 Ohio St.3d 98, 524 N.E.2d 166 (1988). To prove assault and battery under Ohio law, Plaintiff must establish that Huhn unlawfully touched him with the intent of inflicting injury or creating the fear of injury. *Blankenship v. Parke Care Center, Inc.*, 913 F.Supp. 1045, 1952 (S.D.Ohio 1995). Plaintiff has provided no facts to support such a claim. Any contact Huhn had with Johari was incident to a lawful arrest based on Huhn's determination of probable cause and was necessary to contain an uncooperative and hostile suspect. This contact certainly was not malicious or wanton, as required by subsection (b). And Conley, of course, did not touch Plaintiff at all. Therefore, Defendants are entitled to summary judgment on this claim.

Second, Plaintiff has not established any facts or argument to support his claim of false arrest, false imprisonment, or malicious prosecution. Under Ohio law, false arrest includes false imprisonment and depends on the existence of probable cause. *Tucker v. Kroger Co.*, 133 Ohio App.3d 140, 146, 726 N.E.2d 1111 (1999). Since Huhn had probable cause to arrest Plaintiff for allegedly assaulting Raney, Plaintiff cannot maintain these claims. Moreover, Johari cannot maintain his claim of malicious prosecution. To state a cause of action for malicious prosecution, Plaintiff must allege malicious institution of prior proceedings against him by Defendants, a lack of probable cause for filing

the charges, termination of prior proceedings in plaintiff's favor, and seizure of plaintiff's person or property during course of the prior proceedings. *Crawford v. Euclid Nat. Bank*, 19 Ohio St.3d 135, 483 N.E.2d 1168 (1985). Plaintiff fails this test because he cannot provide any facts to argue that there was not probable cause for filing assault charges against him. The charges were only dropped once Raney failed to show up in court. Thus, Defendants are entitled to summary judgment on these claims.

Finally, Plaintiff's claim of dereliction of duty under O.R.C. § 2921.44 also fails. Section 2921.44(B) states: "No law enforcement, ministerial, or judicial officer shall negligently fail to perform a lawful duty in a criminal case or proceeding." Plaintiff has not provided any facts or argument to establish that Defendants failed to perform some duty in this case. Again, Huhn acted based on his determination of probable cause and used reasonable force to arrest Johari. And Conley conducted a thorough investigation into Johari's allegations, and found them to be unfounded. Thus, Defendants are entitled to summary judgment on Plaintiff's claim under O.R.C. § 2921.44.

The Court, therefore, GRANTS Defendant's Motion for Summary Judgment as to all of Plaintiff's state law claims.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment in its entirety, and **DENIES** Plaintiff's Motion for Summary Judgment in its entirety.

**IT IS SO ORDERED.**