[Cite as *State v. Fowler*, 2025-Ohio-3055.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

ANTHONY FOWLER

    Appellant

C.A. No.    30786

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2022-09-3082-A

DECISION AND JOURNAL ENTRY

Dated: August 27, 2025

---

SUTTON, Judge.

{¶1}    Defendant-Appellant Anthony Fowler appeals the judgment of the Summit County Court of Common Pleas.  For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

{¶2}    This appeal arises from the shooting death of D.P., which occurred shortly after D.P. engaged Mr. Fowler in a fight at the Mini Mart.  At the Mini Mart, D.P. punched Mr. Fowler in the face.  D.P.'s nephew and Alexander Quarterman, Mr. Fowler's co-defendant, got involved in this scuffle.  At that time, D.P.'s nephew felt what he believed to be a gun on Mr. Quarterman's person.  Mr. Fowler and Mr. Quarterman left the Mini Mart together in a red Jeep Cherokee.  Mr. Fowler, who was driving the red Jeep Cherokee, struck D.P. from behind with the vehicle as D.P. was walking through a parking lot.  When D.P. tried to stand up, Mr. Quarterman, the passenger in the Jeep, shot D.P. in the neck.

{¶3} After an investigation, Mr. Fowler, and Mr. Quarterman were charged with: (1) murder, in violation of R.C. 2903.02(A), an unclassified felony; (2) felony murder, in violation of R.C. 2903.02(B) with the predicate offense of felonious assault, an unclassified felony; (3) felonious assault, in violation of R.C. 2903.11(A)(2)/(D)(1)(a), related to the use of a motor vehicle, a felony of the second degree; and (4) felonious assault, in violation of R.C. 2903.11(A)/(D)(1)(a), related to use of a firearm, a felony of the second degree. The counts of murder, felony murder, and felonious assault, related to the use of a firearm, all had firearm specifications attached pursuant to R.C. 2941.145(A).

{¶4} Mr. Fowler pleaded not guilty on all counts. Prior to a jury trial, Mr. Fowler filed a motion to sever his case from Mr. Quarterman's case, and the trial court denied the motion. After a joint jury trial, the jury found Mr. Fowler guilty on all counts. Mr. Fowler was sentenced to a term of imprisonment of 18 years to life. The trial court also ordered Mr. Fowler to register as a violent offender.

{¶5} Mr. Fowler now appeals raising five assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.**

{¶6} In his first assignment of error, Mr. Fowler argues there was insufficient evidence to support his convictions and his convictions are against the manifest weight of the evidence. Specifically, Mr. Fowler argues it is against the manifest weight and sufficiency of the evidence that he conspired with Mr. Quarterman to kill D.P.

{¶7} "[S]ufficiency and manifest weight are separate and distinct questions, and this Court has repeatedly noted that it is not appropriate to combine sufficiency and manifest weight

arguments within a single discussion." *State v. Zappa*, 2022-Ohio-243, ¶ 6 (9th Dist.). *See* App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to . . . argue the assignment separately in the brief[.]"). Nonetheless, in the interest of justice, we exercise our discretion to consider the merits of Mr. Fowler's combined assignment of error.

{¶8} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390, (Cook, J. concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶9} As to manifest weight of the evidence, however, this Court has previously stated:

> [i]n determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the

conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶10} An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 2020-Ohio-3075, ¶ 20 (9th Dist.). "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id*.

{¶11} Here, the evidence presented at trial showed: (1) Mr. Fowler, who was driving his cousin's red Jeep Cherokee, struck D.P. from behind and D.P. fell to the ground in a parking lot; (2) while D.P. attempted to stand up, Mr. Quarterman, from the front passenger seat of the red Jeep Cherokee, fatally shot D.P. in the neck; (3) this incident occurred shortly after Mr. Fowler and D.P. had an altercation in the Mini Mart where D.P. punched Mr. Fowler in the face; (4) D.P.'s nephew, who was at the Mini Mart with D.P., felt what he thought was a gun on Mr. Quarterman when he attempted to break up the fight between D.P. and Mr. Fowler; (5) D.P.'s nephew saw Mr. Fowler and Mr. Quarterman leave the Mini Mart together in a red Jeep Cherokee; (6) before leaving the Mini-Mart with Mr. Fowler, D.P.'s nephew heard Mr. Quarterman state "I'm going to get him" and D.P.'s nephew described Mr. Quarterman as being in a rage; (7) video surveillance footage of the Mini Mart, which was played for the jury, shows Mr. Fowler and Mr. Quarterman arrive and leave together in the red Jeep Cherokee; (8) video surveillance footage of the parking lot where D.P. was killed, showed the red Jeep Cherokee strike D.P. from behind and the passenger shoot D.P.; (9) Mr. Quarterman's white t-shirt, which was identifiable on the video surveillance,

was found inside the red Jeep Cherokee driven by Mr. Fowler; and (10) a .9 millimeter spent shell, cartridge casing was found on the exterior window panel of the red Jeep Cherokee.

{¶12}  In viewing this evidence in a light most favorable to the State, the jury could reasonably conclude, beyond a reasonable doubt, that Mr. Fowler, after fighting with D.P. at the Mini Mart, conspired with Mr. Quarterman to murder D.P. and was complicit in doing so.  Further, although Mr. Fowler alleges there are  inconsistencies in D.P.'s nephew's testimony regarding the incident and that the police did not do a thorough investigation into this incident, the jury heard all of the direct and cross-examination of all of the witnesses and viewed the surveillance videos which were consistent with D.P.'s nephew's accounting of what occurred that day.  As such, we cannot say the jury clearly lost its way and created such a manifest miscarriage of justice that Mr. Fowler's convictions must be reversed and a new trial ordered.

{¶13}  Accordingly, Mr. Fowler's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING [MR.] FOWLER'S MOTION TO SEVER.**

{¶14}  In his second assignment of error, Mr. Fowler argues the trial court abused its discretion in denying Mr. Fowler's motion to sever his case from Mr. Quarterman's case. Specifically, Mr. Fowler argues the evidence at trial "overwhelmingly accumulated" against Mr. Quarterman and Mr. Fowler was convicted based upon evidence that applied to his co-defendant.

{¶15}  "It is well-settled that the law favors joinder." *State v. Vu*, 2012-Ohio-746, ¶ 37 (9th Dist.), quoting *State v. Merriweather*, 1998 WL 239773, *3 (9th Dist. May 6, 1998). While Crim.R. 8 governs the joinder of multiple offenses in a single indictment, Crim.R. 14 "addresses the joinder of completely separate indictments." *State v. Hatfield*, 2008-Ohio-2431, ¶ 14 (9th Dist.). "A defendant claiming prejudice by the joinder of offenses may move for severance under

Crim.R. 14." *Merriweather* at *3. "If it appears that a defendant . . . is prejudiced by a joinder of . . . defendants . . . for trial together . . ., the court shall . . . grant a severance of defendants, or provide such other relief as justice requires." *Vu* at ¶ 37, citing Crim.R. 14. To preserve a claimed error under Crim.R. 14, however, a defendant must renew his motion to sever either at the close of the State's case or at the conclusion of all of the evidence. *See State v. Owens*, 51 Ohio App.2d 132, 146 (9th Dist. 1975). "If a defendant fails to renew his Crim.R. 14 motion, he forfeits the issue on appeal, all but for a claim of plain error." *State v. Rice*, 2016-Ohio-8443, ¶ 12 (9th Dist.), citing *State v. Garcia*, 2016-Ohio-4667, ¶ 14 (9th Dist.).

{¶16} "Notice of plain error . . . is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Gordon*, 2018-Ohio-259, ¶ 23, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. "To successfully assert that a trial court committed plain error, a defendant must show an error that constitutes an obvious defect in the trial proceedings and demonstrate that the error affected the outcome of the trial." *Gordon* at ¶ 23, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

{¶17} Here, the record reveals Mr. Fowler failed to renew his Crim.R. 14 motion to sever the trials either at the close of the State's case or at the conclusion of all of the evidence. Although Mr. Fowler has only preserved plain error under Crim.R. 52(B), he does not argue plain error on appeal. Indeed, his appellate brief mentions the plain error standard but does not make a plain error argument. Due to Mr. Fowler's failure to make a plain error argument, we decline to sua sponte fashion one and then address it. *See* App.R. 16(A)(7); *See also State v. Hairston*, 2006-Ohio-4925, ¶ 11 (9th Dist.) ("Accordingly, as Appellant failed to develop his plain error argument, we do not reach the merits and decline to address this argument.").

{¶18} Accordingly, Mr. Fowler's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

**THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO PROVIDE COMPLETE ACCURATE JURY INSTRUCTIONS, FAILING TO GRANT A MISTRIAL[,] AND BY COMMENTING IN A [MANNER] WHICH PREJUDICED [MR. FOWLER].**

{¶19} In his third assignment of error, Mr. Fowler claims the trial court committed plain error by failing to provide complete accurate jury instructions, failing to grant a mistrial, and by commenting during trial in a manner which prejudiced Mr. Fowler.

{¶20} As stated above, "[n]otice of plain error . . . is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Gordon*, 2018-Ohio-259, at ¶ 23, quoting *Long*, 53 Ohio St.2d 91, at paragraph three of the syllabus. "To successfully assert that a trial court committed plain error, a defendant must show an error that constitutes an obvious defect in the trial proceedings and demonstrate that the error affected the outcome of the trial." *Gordon* at ¶ 23, citing *Rogers*, 2015-Ohio-2459, at ¶ 22.

{¶21} Here, although Mr. Fowler indicates the trial court committed plain error in his stated assignment of error, he does not undertake a plain error analysis. In fact, Mr. Fowler does not even mention the plain error standard in making his arguments regarding the jury instructions, mistrial, and alleged prejudicial comments made by the trial court. Due to Mr. Fowler's failure to make a plain error argument, we decline to sua sponte fashion one and then address it. *See* App.R. 16(A)(7); *see also State v. Cross*, 2011-Ohio-3250, ¶ 41 (9th Dist.).

{¶22} Accordingly, Mr. Fowler's third assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

**THE TRIAL COURT COMMITTED ERROR BY PROVIDING A JURY INSTRUCTION INCLUDING AID AND ABET LANGUAGE IN CONJUNCTION WITH COMPLICITY PURSUANT TO R.C. 2923.03.**

{¶23} In his fourth assignment of error, Mr. Fowler argues the trial court erred by providing a jury instruction including aid and abet language in conjunction with complicity pursuant to R.C. 2923.03. Specifically, as to defining aid or abet, Mr. Fowler challenges the language "supported, assisted, encouraged, cooperated with, advised, or incited" the Defendant who acted as the principal offender in the commission of the offense.

{¶24} As this Court has explained:

"[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." . . . "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." . . . "This Court reviews a trial court's decision to give or decline to give a particular jury instruction for an abuse of discretion under the facts and circumstances of the case." . . . The abuse of discretion standard implies that a trial court acted unreasonably, arbitrarily, or unconscionably. . . . When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court.

*State v. Ross*, 2023-Ohio-1185, ¶ 50 (9th Dist.).

{¶25} As to complicity, R.C. 2923.03 states, in relevant part:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) *Aid or abet another in committing the offense*;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.
. . .
(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

(Emphasis added.)

{¶26} Here, the trial court instructed the jury as follows regarding complicity:

In considering the crimes charged in the indictment, there is an additional proposition you need to understand and consider and that is the concept of complicity as an aider and abettor.

The State of Ohio has presented a theory that [Mr. Fowler] acted in complicity with the principal offender in the commission of felonious assault and/or murder. A person who is complicit with another in the commission of a criminal offenses is regarded as guilty as if he personally performed every act constituting the offense. This is true even if he did not personally perform every act constituting the offense or was not physically present at the time the offense was committed.

To determine whether one or both of the Defendants were complicit by aiding and abetting, you must find beyond a reasonable doubt that one or both Defendants supported, assisted, encouraged, cooperated with, advised, or incited the Defendant who acted as the principal offender in the commission of the offense, and that one or both of the Defendants share the criminal intent of the Defendant who acted as the principal offender.

Such intent may be inferred from the circumstances surrounding the offense, including, but not limited to, presence, companionship, and conduct before and after the offense was committed. The mere presence of a person at the scene of the offense is not sufficient to prove, in and of itself, that a person was an aider and abettor.

{¶27} At trial, when Mr. Fowler objected to defining complicity as "supported, assisted, encouraged, cooperated with, advised, or incited the Defendant who acted as the principal offender in the commission of the offense[,]" the State explained this jury instruction was taken directly from the Ohio Jury Instructions and is a standard instruction used in every trial. The trial court agreed with the State's assessment and overruled the objection.

{¶28} Upon our review, the definition of complicity given to the jury in this matter is almost identical to that found in the Ohio Jury Instruction. Indeed, the Ohio Jury Instruction states:

8. AIDED OR ABETTED. Before you can find the defendant guilty of complicity by aiding and abetting, you must find beyond a reasonable doubt that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal offender in the commission of the offense and that the defendant shared the criminal intent of the principal offender. Such intent may be inferred from the circumstances

surrounding the offense including but not limited to presence, companionship, and conduct before and after the offense was committed. The mere presence of the defendant at the scene of the offense is not sufficient to prove, in and of itself, that the defendant was an aider and abettor.

Further, the Ohio Jury Instruction explains the definition of aid and abet was drawn from the Supreme Court of Ohio decision in *State v. Johnson*, 93 Ohio St. 3d 240, 245 (2001). The *Johnson* Court stated, "we hold that to support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime."

{¶29} Thus, for the foregoing reasons, the trial court did not abuse its discretion in issuing this jury instruction.

{¶30} Accordingly, Mr. Fowler's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

**THE TRIAL COURT [ERRED] [IN] ADMITTING [DEMONSTRATIVE] EVIDENCE AND PRESENTING THOSE EXHIBITS TO THE JURY FOR USE IN DELIBERATIONS.**

{¶31} In his fifth assignment of error, Mr. Fowler argues the trial court erred in admitting demonstrative evidence and presenting those exhibits to the jury for use in its deliberations. Specifically, Mr. Fowler contends the trial court erred in allowing the State's Google maps into evidence because they "were not to scale or authenticated to show they were a fair and accurate representation of the neighborhoods."

{¶32} "Demonstrative evidence is admissible if it satisfies the general standard of relevance set forth in Evid.R. 401 and if it is substantially similar to the object or occurrence that it is intended to represent." *State v. Jones*, 2012-Ohio-5677, ¶ 82, citing *State v. LaMar*, 2002-

Ohio-2128, ¶ 90. Evid.R. 401 states: "'Relevant evidence'" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "The admission of demonstrative evidence is subject to Evid.R. 403." *Jones* at ¶ 82.

**{¶33}** Evid.R. 403 states:

(A) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

(B) Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.

**{¶34}** "A trial court's ruling on the admission of demonstrative evidence is reviewed under the abuse-of-discretion standard." *State v. Ford*, 2023-Ohio-2220, ¶ 38 (9th Dist.), citing *State v. Herring*, 94 Ohio St.3d 246, 255 (2002). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). Unless the trial court "has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Issa*, 93 Ohio St.3d 49, 64 (2001).

**{¶35}** Here, the record shows Mr. Fowler objected to the State's use of Google maps to illustrate the addresses relevant to this incident. In response, the State explained the Google maps would assist the jury in understanding D.P.'s nephew's testimony regarding his knowledge of the neighborhood where this incident took place. Further, the State argued that D.P.'s nephew could testify to the relevance of the Google maps because he has firsthand knowledge of the area in question. The trial court, in overruling the objection, indicated if D.P.'s nephew recognizes what

is in the photos, "he can certainly testify to it." Further, the trial court stated the Google maps "are probably common knowledge for anyone who lives in the neighborhood."

{¶36} Based upon this record, we cannot say the trial court abused its discretion in allowing the Google maps to be used as demonstrative evidence during D.P.'s nephew's testimony and later admitting them into evidence. The Google maps photographs are relevant to illustrate the area in which this incident took place and are not unduly prejudicial to Mr. Fowler. Further, D.P.'s nephew recognized and identified the Google maps photographs during his testimony which allowed him to explain the area in question to the jury.

{¶37} Accordingly, Mr. Fowler's fifth assignment of error is overruled.

III.

{¶38} For the foregoing reasons, Mr. Fowler's five assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                      _____

                                      BETTY SUTTON
                                      FOR THE COURT

STEVENSON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

KIMBERLY STOUT-SHERRER, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.