[Cite as *Kanode v. Columbus*, 2025-Ohio-5533.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Holly Kanode, | : | |
| Plaintiff-Appellant, | : | No. 25AP-175 |
| | | (C.P.C. No. 23CV-4880) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| City of Columbus et al., | : | |
| Defendants-Appellees. | : | |
| Phillip Walls, | : | |
| Plaintiff-Appellant, | : | No. 25AP-176 |
| | | (C.P.C. No. 23CV-2351) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| City of Columbus et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 11, 2025

**On brief:** *Zipkin Whiting Co., L.P.A., Lewis A. Zipkin*, and *Kevin M. Gross*, for appellants. **Argued:** *Kevin M. Gross*.

**On brief:** *Ice Miller LLP, Molly R. Gwin*, and *Amy E. Flowers*, for appellees. **Argued:** *Molly R. Gwin*.

APPEALS from the Franklin County Court of Common Pleas

JAMISON, P.J.

{¶ 1} Plaintiffs-appellants, Holly Kanode and Phillip Walls (collectively "appellants"), appeal from the January 10, 2025 judgment of the Franklin County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, City of Columbus ("the city") and Richard Wozniak, Deputy Director with the city's Department of

Public Safety (collectively "appellees").  For the following reasons, we affirm the judgment of the trial court.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}    On April 5, 2023, Walls filed a complaint against appellees in the Franklin County Court of Common Pleas.  The complaint alleged malicious prosecution, abuse of process, and civil liability for criminal acts.  The civil liability for criminal acts count only pertained to Wozniak.  The allegations in the complaint stemmed from criminal charges filed against Walls as a result of his actions during the George Floyd protests in May of 2020.

{¶ 3}    Appellees answered the complaint on May 11, 2023.

{¶ 4}    On July 11, 2023, Kanode filed a complaint against appellees in the Franklin County Court of Common Pleas.  The complaint alleged malicious prosecution based on criminal charges filed against Kanode stemming from her actions during the George Floyd protests in May 2020.

{¶ 5}    Appellees answered the complaint on August 15, 2023.

{¶ 6}    These two actions were consolidated on September 20, 2023.

{¶ 7}    The incident giving rise to the Walls matter occurred on May 29, 2020 at approximately 8:46 p.m. at the corner of Broad and High Streets in downtown Columbus.  On the date in question, Walls was working as a member of a Columbus Police Department ("CPD") bicycle unit.  The unit was instructed by Sergeant Daniel Pickrell to clear a group of protestors from Broad and High Streets "by any means reasonably necessary."  (Walls Dep. at 58.)  Once at the intersection, Walls began instructing individuals to clear the area.  He also began deploying mace at individuals.  Two of those individuals were later identified as Rick Lane and Reverend Claressa Thompson.  In Lane's subsequent statement to Wozniak, he indicated that he was attempting to aide Reverend Thompson when Walls deployed his mace.

{¶ 8}    As a result of this incident, Walls was charged with the following offenses: two counts of assault, violations of R.C. 2903.13(A), misdemeanors of the first degree; two counts of dereliction of duty, violations of R.C. 2921.44(E), misdemeanors of the second degree; and two counts of interfering with civil rights, violations of R.C. 2921.45(A),

misdemeanors of the first degree. Prior to trial, the parties reached a resolution in which the charges were dismissed and Walls had a meeting with the alleged victims.

{¶ 9} The incident giving rise to the Kanode matter occurred on May 30, 2020 at approximately 11:48 a.m. near the corner of Broad and High Streets in downtown Columbus. On the date in question, Kanode was working as a CPD officer in response to the George Floyd protests. At some point there was an interaction between an individual identified as Nadia Lynch and CPD Officer Shawn Dye. Kanode can be heard on her body worn camera ("BWC") stating that Lynch grabbed the officer (later identified as Officer Dye) and took him to the ground. Kanode then confirms with Officer Shannon Schmid that Lynch should be arrested.

{¶ 10} In a subsequent conversation with Sergeant Chris Capretta, Kanode can be heard stating that Lynch grabbed Officer Dye and jerked him down to the ground with his gear. She then indicates that Lynch should be arrested for assault on a police officer. Kanode then tells CPD Officer Mathew Baker that Lynch grabbed Officer Dye's back and pulled him to the ground. The officers decided not to charge Lynch with assault because at the time, Officer Dye was not identified. However, Lynch was charged with resisting arrest and disorderly conduct. Those charges were eventually dismissed when additional video of the incident was received.

{¶ 11} As a result of this incident, Kanode was charged with the following offenses: falsification, a violation of R.C. 2921.13(A)(2)(3) or (7), a misdemeanor of the first degree; and dereliction of duty, a violation of R.C. 2921.44(E), a misdemeanor of the second degree. The matter proceeded to a bench trial, after which the court found Kanode not guilty.

{¶ 12} In July of 2020, Wozniak, a former special agent and relief supervisor with the Federal Bureau of Investigation ("FBI"), was hired by the city as a deputy director of its Department of Public Safety. His duties included reviewing complaints regarding CPD officer misconduct during the George Floyd protests that occurred in the city from May 28 into June 2020. In reviewing these complaints, he was to evaluate whether any officers should be criminally charged as a result of their conduct.

{¶ 13} One of the cases Wozniak investigated was the matter involving Walls. As part of his investigation, he reviewed the following videos: the BWC of Walls; the BWCs of Officer Christopher Billman and another CPD officer; and two city cameras positioned at

the intersection.  Wozniak completed interviews with alleged victim Lane; alleged victim Reverend Thompson; Whitney Sims; CPD Commander Mark Lang; Officer Billman; Officer Steve Rowlands; Sergeant Caroline Castro; and Sergeant Pickrell.  Wozniak also reviewed activity logs completed by Sergeants Castro and Pickrell, as well as various CPD use of force policies.

{¶ 14}  Prior to signing his probable-cause affidavit against Walls, he consulted with former CPD training Officer Willard McIntosh.  McIntosh was shown the BWCs of Walls and Officer Billman.  McIntosh told him "that generally Walls['] actions were not a trained CPD technique[] and that deploying the pepper spray was not a reasonable use of force." (Wozniak Aff. at ¶ 7.)

{¶ 15}  Wozniak also investigated the incident involving Kanode.  As part of his investigation, he reviewed the BWCs of Kanode and Officer Rowlands, as well as two city cameras in the area of the incident.  He conducted interviews with Lynch; Shelby Stephens; Sadie Farley; Officers Schmid, Gary Patterson, Robert Reffitt, Matthew Baker, and Rowlands; Lieutenant Kyle Kincaid; Sergeant Pickrell; Lieutenant Joe Ritch; Sergeant Capretta; another CPD sergeant; and Lieutenant Howard Pettengill.  Wozniak also reviewed Officer Dye's interview and use of force report; Officer Patterson's previous interview; a use of force report completed by Sergeant Castro; and the arrest report for Lynch.

{¶ 16} After the charges on Walls and Kanode were filed, Attorney Bradley Nicodemus was appointed to assist Special Prosecutor Kathleen Garber in the special prosecution of the cases.  At the time, Nicodemus had 14 years of experience in criminal law including misdemeanor and felony prosecutions.  In his deposition, Nicodemus testified that he would not have filed the charges against Walls or Kanode.  However, when asked if he believed that there was probable cause that Walls committed assault, he answered, "Probable cause that he committed assault, yes."  (Nicodemus Dep. at 16.)  Nicodemus explained that when he is making charging decisions, he is not only looking for probable cause, but also for whether or not he can prove his case beyond a reasonable doubt.

{¶ 17}  On June 7, 2024, appellees filed a motion for summary judgment.  In their motion, appellees contended that both the city and Wozniak were immune from liability. Furthermore, they claimed that both Walls and Kanode could not meet the required

elements of malicious prosecution because there was probable cause for the charges and/or they could not provide evidence of actual malice. Additionally, appellees argued that Walls failed to provide evidence of a termination of the proceedings on the merits. Appellees further contended that Walls failed to establish an ulterior motive for his abuse-of-process claims. Lastly, they argued that Walls' R.C. 2307.60 claims were time-barred and fail because Walls could not demonstrate any false statements.

{¶ 18} Appellants filed a motion for summary judgment on their malicious prosecution claims. In their motion, appellants generally contend that the material facts necessary to prove their claims were not in dispute and therefore, the trial court was required to enter judgment in favor of appellants.

{¶ 19} Appellees filed a memorandum contra to appellants' motion for summary judgment. Appellants filed a reply brief in support of their motion for summary judgment. Appellants also filed a brief in opposition to the appellees' motion for summary judgment. Appellees filed a reply to appellants' brief in opposition to appellees' motion for summary judgment.

{¶ 20} On January 10, 2025, the trial court rendered a decision granting appellees' motion for summary judgment and denying as moot appellants' motion for summary judgment. In its decision the court found that the city and Wozniak were immune under R.C. 2744.03. Alternatively, the court found that appellants' claims failed as a matter of law.

{¶ 21} It is from that decision that appellants now appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 22} Appellants assign the following three assignments of error for our review:

> [1.] The City of Columbus cannot assert any tort immunity defenses pursuant to R.C. 2744.09(B) because Officer Walls and Sergeant Kanode's claims arose out of their employment relationships with the City.
>
> [2.] The trial court erred by granting summary judgment to Wozniak on immunity grounds and finding that Walls' malicious prosecution claim against Wozniak and the City of Columbus failed as a matter of law.
>
> [3.] The trial court erred by granting summary judgment to Wozniak on immunity grounds and finding that Kanode's

malicious prosecution claim against Wozniak and the City of Columbus failed as a matter of law.

## III.  STANDARD OF REVIEW

{¶ 23}  Under Civ.R. 56(C), summary judgment is proper when the moving party establishes: (1) an absence of genuine issues of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds could only find in favor of the moving party.  *See, e.g., State ex rel. Duncan v. Mentor City Council*, 2005-Ohio-2163, ¶ 9; *Oliver v. Fox's Food, L.L.C.*, 2023-Ohio-1551, ¶ 8 (10th Dist.).

{¶ 24}  "The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Plough v. Nationwide Children's Hosp.*, 2024-Ohio-5620, ¶ 29 (10th Dist.).  The moving party must point to evidence in the record affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims.  *Oliver* at ¶ 9, citing *Dresher v. Burt*, 1996-Ohio-107, ¶ 18 and *Vahila v. Hall*, 1997-Ohio-259, ¶ 20.

{¶ 25}  If the moving party satisfies its initial burden, then the nonmoving party "has a reciprocal burden . . . to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Dresher* at ¶ 18.  The nonmoving party must submit evidentiary material that shows the existence of a genuine dispute over the facts. *A.M. v. Miami Univ.*, 2017-Ohio-8586, ¶ 30 (10th Dist.).  A fact is material if it might affect the outcome of the case under the applicable substantive law.  *Turner v. Turner*, 1993-Ohio-176, 67 Ohio St.3d 337, 340.  There is a genuine dispute if the evidence presents a sufficient disagreement between the parties' positions.  *Id.*

{¶ 26}  An appellate court reviews a decision granting summary judgment de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 2015-Ohio-2661, ¶ 12 (10th Dist.).  "Under the de novo standard of review, we apply the same legal standard as the trial court but conduct an independent review of the evidence without deference to the trial court's decision." *Plough*

at ¶ 31. The trial court's judgment must be affirmed if any grounds raised by the movant in the trial court support it. *Riverside v. State*, 2010-Ohio-5868, ¶ 17 (10th Dist.).

{¶ 27} It is well-established that "on a summary-judgment motion, any inferences regarding the evidence, including the resolution of ambiguities or inconsistencies, must be made in a manner that favors the nonmoving party." *Smathers v. Glass*, 2022-Ohio-4595, ¶ 32. An appellate court is not only required "to construe evidence in a light most favorable to nonmoving parties but to also resolve inferences which may reasonably be drawn from the evidence in favor of nonmoving parties." *Thompson v. Ohio State Univ. Physicians, Inc.*, 2011-Ohio-2270, ¶ 16 (10th Dist.). " 'Where competing inferences may be drawn or where the facts presented are uncertain or indefinite, summary judgment is not appropriate and such matters must be left to the trier-of-fact.' " *Id.*, quoting *Sprouse v. Allstate Ins. Co.*, 1989 Ohio App. LEXIS 3990, *4-5 (10th Dist. Oct. 17, 1989).

## IV. LEGAL ANALYSIS

{¶ 28} Although appellants assert three assignments of error, this matter can be broken down into two distinct issues. First, whether the trial court erred in finding that immunity applied to appellees. Second, whether the trial court erred in finding that appellants' claims for malicious prosecution failed as a matter of law.

{¶ 29} With regards to immunity, the trial court found that the city was immune under R.C. 2744.02(A)(1) and that none of the exceptions contained in R.C. 2744.02(B) applied. In their first assignment of error, appellants assert that the political subdivision immunity does not apply in this case because "[t]he criminal prosecutions [appellants] faced and overcame were directly related to their performance as [CPD] officers." (Appellant's Brief at 25.) Appellants further allege that the court failed to engage in the causal-relationship analysis required by R.C. 2744.09(B).

{¶ 30} Pursuant to R.C. 2744.02(A)(1):

> For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Several exceptions to the above immunity are listed in R.C. 2744.02(B). However, it is undisputed that none of these exceptions are applicable in this matter. Rather, appellants point to R.C. 2744.09(B), which states that "[t]his chapter does not apply to . . . [c]ivil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision[.]" A determination as to the applicability of 2744.09(B) requires a court to analyze whether " 'there is a causal connection or a causal relationship between the claims raised by the employee and the employment relationship.' " *Vacha v. N. Ridgeville*, 2013-Ohio-3020, ¶ 19, quoting *Sampson v. Cuyahoga Metro. Hous. Auth.*, 2012-Ohio-570, paragraph two of the syllabus.

{¶ 31} Initially, it should be noted that appellants contend the trial court failed to engage in this causal-relationship analysis. However, this claim is belied by the record. In its decision, the court stated that "R.C. 2744.09(B) applies narrowly to claims with a direct *causal connection* to the employment relationship. Plaintiffs' malicious prosecution claims, however, are based on the [c]ity's prosecutorial actions, which are distinct from any employment-related duties and therefore do not meet the standard for invoking this exception." (Emphasis added.) (Jan. 10, 2025 Decision & Entry at 5-6.) Clearly, the trial court engaged in the causal-relationship analysis articulated in *Sampson* and *Vacha*. Just because the court did not find in favor of appellants, does not mean it failed to engage in the proper analysis.

{¶ 32} Moreover, we agree with the trial court's determination that there was no causal connection between appellants' claims and their employment relationship with the city. First, appellants contend that a causal connection existed because "but for their obligations as employees of the [c]ity, [appellants] would not and could not have been tasked by their employer with restoring order in Downtown Columbus during the destructive and disorderly riots in May and June 2020." (Appellant's Brief at 27.) Furthermore, appellants contend that their claims could only arise out of their employment with the city because several of the offenses charged only applied to public servants.

{¶ 33} Such a broad interpretation of R.C. 2744.09(B) is unwarranted and unsupported by the law. Indeed, if we were to interpret this exception in the manner requested by appellants, we would be hard pressed to find a situation wherein this

exception would not apply. Here, appellants' claims were related to the city's prosecutorial functions, which is separate and distinct from the employment relationship between appellants and the city. Furthermore, the fact that the legislature included in R.C. 2744.09(B) a clause referring to actions brought by an employee's collective-bargaining representative, is strong evidence that the legislature intended to limit this exception to claims more directly tied to the employer-employee relationship. To interpret this exception to include any claims that would not have arisen but for the fact that a plaintiff was a public servant, employed by the defendant, would render political subdivision tort liability meaningless in the employer-employee context.

{¶ 34} Based on the foregoing, the trial court correctly determined that the city was entitled to immunity under R.C. 2744.02(A)(1) and that the exception contained in R.C. 2744.09(B) did not apply. Appellants' first assignment of error is overruled.

{¶ 35} In portions of their second and third assignments of error, appellants contend that the trial court erred in finding that Wozniak was entitled to immunity. Initially, it should be noted that appellants failed to appeal the trial court's finding that Wozniak was entitled to absolute immunity. This is a type of immunity distinct from that contained in R.C. 2744.02(A)(1). In *M.J. DiCorpo, Inc. v. Sweeney*, 1994-Ohio-316, 69 Ohio St.3d 497, 506, the Supreme Court of Ohio held that the initiation of criminal proceedings, the first element of a malicious prosecution claim, begins with an informal complaint to a prosecuting attorney. Thus, these statements are protected by the doctrine of absolute immunity in a judicial proceeding. *Id*. at 507. Therefore, because appellant failed to challenge the trial court's ruling in this regard, we could arguably affirm the court's decision regarding Wozniak on that basis alone.

{¶ 36} Furthermore, instead of separately arguing the trial court's ruling regarding Wozniak's immunity, appellants combined this alleged error into their second and third assignments of error which also discuss the trial court's determination that appellants' claims failed as a matter of law. Pursuant to App.R. 12(A)(2), "[t]he court may disregard an assignment of error presented for review if the party raising it fails . . . to argue the assignment separately in the brief." The issue of Wozniak's immunity and whether appellants' claims fail as a matter of law are separate and distinct issues. As such, this court has the discretion to disregard appellants' arguments regarding Wozniak's immunity. *State*

*v. Fowler*, 2025-Ohio-3055, ¶ 7 (9th Dist.) (stating that sufficiency and manifest weight of the evidence are different questions and should be argued separately).

{¶ 37} Nevertheless, we will address the trial court's finding that Wozniak was entitled to immunity under R.C. 2744.03(A)(6). Pursuant to R.C. 2744.03(A)(6), employees of a political subdivision are entitled to immunity unless one of three exceptions apply. Under R.C. 2744.03(A)(6)(b), an employee is not entitled to immunity if his or her "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." In their second and third assignments of error, appellants argue there was a genuine issue of material fact as to whether this exception applied to Wozniak.

{¶ 38} Malicious purpose is defined as " 'a willful and intentional design to do injury, or the intention or desire to harm another, through conduct which is unlawful or unjustified.' " *Cooper v. Tommy's Pizza*, 2010-Ohio-2978, ¶ 9 (10th Dist.), quoting *Johari v. Columbus Police Dept.*, 186 F.Supp.2d 821, 831 (S.D.Ohio 2002). Although lack of probable cause can give rise to an inference that a law enforcement officer acted with malice, lack of probable cause alone is insufficient to demonstrate an officer acted with malice. *Id.* "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 2012-Ohio-5711, paragraph three of the syllabus. Conduct is reckless in nature if it is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus. In order for an individual's conduct to be reckless, the actor must disregard a known risk and be conscious that his or her conduct will probably result in injury. *O'Toole v. Denihan*, 2008-Ohio-2574, paragraph three of the syllabus.

{¶ 39} Appellants contend that they established that the exception set forth in R.C. 2744.03(A)(6)(b) applies because there was no probable cause to initiate proceedings on the offenses with which appellants were charged. Appellants also point to the testimony of their expert witness, James Scanlon, who opined that Wozniak's investigation was malicious and one-sided and the charges against appellants lacked probable cause.

{¶ 40} Based on our independent review of the record, we find that the trial court correctly determined that R.C. 2744.03(A)(6)(b) did not apply to Wozniak's actions.

Assuming arguendo that there was not probable cause for the charges initiated against appellants, as previously stated, lack of probable cause alone is insufficient for purposes of R.C. 2744.03(A)(6)(b). Here, appellants have failed to point to any specific fact in the record that supports a conclusion that Wozniak was acting in bad faith, with a malicious purpose, or in a wanton or reckless manner. Wozniak was tasked to undertake criminal investigations into these two matters. The record reflects he conducted a nearly year-long, thorough investigation during which he reviewed reports, conducted interviews, and reviewed various camera footage. Before filing charges, he consulted with other law enforcement officials and Special Prosecutor Garber. There is no evidence in the record that Wozniak had a personal or professional vendetta against appellants. In fact, there is no evidence that any of the three have ever had any interaction. As such, there is no evidence that Wozniak engaged in conduct that was malicious, wanton, or reckless.

{¶ 41} Appellants also point to the testimony of their expert witness, Scanlon. First, Scanlon opined that appellants' charges lacked probable cause. However, as previously stated, a lack of probable cause alone is insufficient to invoke the exception in R.C. 2744.03(A)(6)(b). Scanlon further opined that Wozniak's conduct was malicious in nature. However, this appears to be purely based on Scanlon's criticisms of Wozniak's investigative methods. Just because Scanlon would have investigated these matters or interviewed witness's differently, does not establish that Wozniak was acting maliciously when he investigated and ultimately charged appellants.

{¶ 42} Based on the foregoing, the trial court correctly determined that Wozniak was entitled to immunity regarding appellants' claims.

{¶ 43} Even if appellants could establish that appellees were not entitled to immunity in this matter, the trial court correctly determined that their malicious prosecution claims failed as a matter of law. In their second and third assignments of error, appellants generally argue that the court erred in granting summary judgment to appellees because there was a genuine issue of material fact as to whether there was probable cause for appellants' charges, and in the case of Walls, whether his use of force was reasonable.

{¶ 44} Initially, it should be noted that the issue before us is neither the strength of the prosecution's case, nor whether we believe charges should have been brought in these matters. The sole issue before us is whether or not there was probable cause for the charges

when they were filed. Based on our review of the record, and considering the low bar presented by the standard of probable cause, we find that the trial court correctly determined that there was probable cause to initiate criminal proceedings in these matters.

{¶ 45} The tort of malicious prosecution involves the following three elements: (1) malice in initiating or continuing a prosecution; (2) lack of probable cause; and (3) resolution of the prosecution in the accused's favor. *Lacey v. Ohio Auditor of State*, 2019-Ohio-4266, ¶ 14 (10th Dist.). "Actions for malicious prosecution have been met with disfavor by Ohio courts." *Id.* "Lack of probable cause generally becomes the essence of a malicious prosecution action because malice may be inferred in the absence of probable cause." *Petty v. Kroger Food & Pharmacy*, 2007-Ohio-5098, ¶ 20 (10th Dist.). Even if a plaintiff can demonstrate actual malice, an action for malicious prosecution fails if there is probable cause. *Pierson v. Aaron's Rental*, 2010-Ohio-5443, ¶ 25 (10th Dist.).

{¶ 46} "For purposes of malicious prosecution, probable cause is defined as '[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.' " (Further quotation marks deleted and citation omitted.) *Id.*, quoting *Dailey v. First Bank of Ohio*, 2005-Ohio-3152, ¶ 15 (10th Dist.). "While the issue of probable cause is ordinarily one of fact to be resolved at trial, it may be determined as a matter of law upon a record that allows for only one reasonable conclusion." *Lacey* at ¶ 20. "Probable cause does not depend on whether the plaintiff was guilty of the offense charged." *Petty* at ¶ 21. "The determination of whether a criminal prosecution was undertaken in the absence of probable cause entails an inquiry into the facts and circumstances actually known to or reasonably within the contemplation of the defendant police officers at the time of the instigation of criminal proceedings." *Mayes v. Columbus*, 105 Ohio App.3d 728, 737 (10th Dist. 1995).

{¶ 47} Walls was charged with violations of R.C. 2903.13(A), assault, misdemeanors of the first degree. R.C. 2903.13(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Physical harm to persons is defined in R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." "A person acts knowingly, regardless of

purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 48} Here it is undisputed that Walls deployed mace in the direction of Lane and Reverend Thompson. Although Walls' purpose may have been to disperse Lane and Reverend Thompson from the area, there is no doubt that Walls was aware that spraying mace in an individual's direction would probably cause physical harm to person(s).

{¶ 49} In their second assignment of error, appellants argue that the case against Walls lacked probable cause because he was "justified in using *reasonable* force to disperse a crowd in a riotous situation." (Emphasis added.) (Appellant's Brief at 32.) In support of this argument, appellants point to the testimonies of Nicodemus and Scanlon, wherein both witnesses opined that Walls' actions were reasonable under the circumstances. However, these opinions were not present at the time the complaints were filed against Walls. At the time of the filing of the complaints, Wozniak had conducted a thorough investigation into this matter. He reviewed numerous witness statements, videos, and conducted his own interviews. It should also be noted that Wozniak has approximately 20 years of experience as an FBI Special Weapons and Tactics ("SWAT") team leader, and two years of experience as a certified tactical instructor. On top of that, prior to filing his probable cause affidavit, Wozniak consulted with former CPD training Officer McIntosh. Officer McIntosh opined that Walls' actions were not a trained CPD technique and Walls' deployment of mace was not a reasonable use of force. In short, the evidence possessed by Wozniak at the time Walls was charged with assault was sufficient to warrant a cautious man in the belief that Walls was guilty of that offense.

{¶ 50} Even if Wozniak possessed the opinions of Nicodemus and Scanlon at the time of the filing of the complaints against Walls, the existence of conflicting testimony does not establish the lack of probable cause. *See Slye v. London Police Dept.*, 2010-Ohio-2824, ¶ 42 (12th Dist.) (conflicting statements by several witnesses did not establish a lack of probable cause). Indeed, many criminal prosecutions feature competing expert opinions and lay witness testimony. Just because the evidence does not entirely weigh in the prosecution's favor, it does not mean there was no basis for filing criminal charges. In fact, Nicodemus testified in his deposition that there was probable cause to believe Walls committed the offense of assault. Nicodemus indicated that he would not have filed

criminal charges against Walls because he did not believe he could prove the allegations beyond a reasonable doubt, a much higher standard than probable cause. In short, appellants have failed to point to any evidence that appellees lacked probable cause in initiating criminal proceedings against Walls.

{¶ 51} Kanode was charged with a violation of R.C. 2921.13(A)(2), (3), or (7), falsification, a misdemeanor of the first degree. The complaint alleged that Kanode did

> knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made when the statement is made with purpose to incriminate another, or the statement is made with purpose to mislead a public official in performing his/her official function, or the statement is in writing on or in connection with a report or return which is required or authorized by law, to wit: Kanode stated that Nadia Lynch should be arrested/charged with assault, stating that Lynch grabbed an officer and took him to the ground.

(June 21, 2024 [Appellant's] Memo. Contra at 12, quoting Pl.'s Ex. 2.) A person acts with purpose when it is "the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 52} Here, Kanode's BWC footage demonstrates that on at least three occasions she told officers that Lynch pulled Officer Dye down to the ground by his gear. This cannot be seen in Kanode's BWC. Furthermore, video submitted by a civilian at the protest shows the opposite, that Officer Dye took Lynch to the ground. Kanode's statements led to Lynch being initially arrested for assault and subsequently charged with resisting arrest and disorderly conduct. Those charges were later dismissed. We find that these facts are sufficient probable cause that Kanode knowingly made a false statement with the purpose of incriminating Lynch.

{¶ 53} Initially it should be noted that the trial court found that there was "no genuine issue of material fact regarding malice." (Decision & Entry at 13.) Malice is a separate and distinct element from a lack of probable cause in a malicious prosecution claim. Appellant's brief focuses on the lack of probable cause and does not challenge the court's determination on malice. Thus, this court could affirm the trial court's judgment

based on that unchallenged finding. However, we will address appellants' arguments regarding probable cause.

{¶ 54} In their third assignment of error, appellants rely heavily on Nicodemus' testimony that he would not have charged Kanode. However, Nicodemus testified that his opinion is based on his standard of whether he can prove the case beyond a reasonable doubt, not whether there was probable cause. Appellants also point to an email from Jeffrey Furbee, the city's Police Legal Advisor. In that email, he expressed confusion as to why charges were filed against Kanode. Appellants state that this "goes directly to the lack of probable cause." (Appellant's Brief at 40.) However, Furbee's email does not address probable cause. There are any number of reasons to initiate or decline criminal charges besides a probable cause determination. One need only look at the testimony of Nicodemus, who makes charging decisions based on a beyond-a-reasonable-doubt standard. As such, appellants' reliance on Nicodemus' testimony and Furbee's email is misplaced.

{¶ 55} Appellants also contend that Kanode's statements did not influence any of the decisions to bring criminal charges against Lynch. First, there is no requirement in the falsification statute that charges actually be filed. The only requirement is that the false statement be made with purpose to incriminate another. Second, based on the record before us, it is clear that Kanode's statements led to Lynch's arrest and charges. Several of Kanode's statements on her BWC footage were about charging Lynch with criminal offenses based on what she allegedly observed. It follows that appellants' argument in this regard is without merit.

{¶ 56} Lastly, appellants argue that Wozniak's failure to interview Kanode demonstrates a lack of probable cause. However, in many criminal cases, charges are filed without speaking to the suspect. This may be for any number of reasons. For example, in this case, where the suspect is a police officer, it may not be logistically possible for investigators to speak with the suspect. Indeed, in this matter, the ability of Wozniak to speak with officers about these complaints was the subject of an arbitration proceeding. Furthermore, even if Wozniak interviewed Kanode, as previously stated, the existence of conflicting testimony does not establish a lack of probable cause.

{¶ 57} Based on the foregoing, the evidence possessed by Wozniak at the time Kanode was charged with falsification was sufficient to warrant a cautious man in the belief that Kanode was guilty of that offense.

{¶ 58} Appellants were charged with multiple offenses in these matters. In *Howse v. Hodous*, 953 F.3d 402, 408-409 (6th Cir. 2020), the court found that where multiple offenses were charged, as long as there was probable cause for one charge, a plaintiff cannot move forward with his/her malicious prosecution claims. However, this determination was called into question by the United States Supreme Court in *Chiaverini v. Napoleon*, 602 U.S. 556, 562-564 (2024). We do not need to answer this question because a review of the record demonstrates that probable cause existed for all charges in appellants' cases.

{¶ 59} Appellants were charged with dereliction of duty, a violation of 2921.44(E). R.C. 2921.44(E) states that "[n]o public servant shall recklessly fail to perform a duty expressly imposed by law with respect to the public servant's office, or recklessly do any act expressly forbidden by law with respect to the public servant's office." "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). It cannot be disputed that committing the offense of assault or falsification in the course of a police officer's duties is forbidden by law. Thus, a conclusion that probable cause existed for either of those offenses necessarily results in a finding that there is probable cause to believe the officer also violated R.C. 2921.44(E).

{¶ 60} Walls was also charged with a violation of R.C. 2921.45(A), interfering with civil rights. R.C. 2921.45(A) states that "[n]o public servant, under color of the public servant's office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right." Having found that there was probable cause to believe that Walls committed the offense of assault against two individuals that were peacefully gathered during a protest, a right protected by the first amendment to the United States Constitution, we also find that probable cause existed to believe Walls violated R.C. 2921.45(A).

{¶ 61} Based on the foregoing, appellants' second and third assignments of error are overruled.

{¶ 62} As previously stated, our task here was not to opine on the strength of the prosecution's case or whether criminal charges should have been brought against appellants. Upon a thorough review of the underlying proceedings, what happened in these matters are examples of the system working as it was intended. An independent investigator conducted a thorough investigation that uncovered probable cause that appellants committed criminal offenses. In one case, an independent special prosecutor exercised his discretion to resolve the matter with a dismissal in exchange for a conversation with the victim(s). In the other, a court trial led to an acquittal of the defendant. These are proceedings that happen on a daily basis in the justice system. The only difference here is that the defendants are police officers, who undoubtedly perform a vital and difficult job in attempting to keep our community safe. Whether certain attorneys would not bring the charges in these cases has no bearing on our decision. We simply find under these circumstances that probable cause existed for the violations charged.

## V. CONCLUSION

{¶ 63} Having overruled appellants' three assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

LELAND and DINGUS, JJ., concur.

_____